NO.   94-258

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

      Plaintiff and Appellant,

  -vs-

STEVEN RICHARD STUBBS,

      Defendant and Respondent.

FILED

MAR 30 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Nineteenth Judicial District,
             In and for the County of Lincoln,
             The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Scott B. Spencer, County Attorney, Libby, Montana

          Hon. Joseph P. Mazurek, Attorney General, Cregg
          Coughlin, Ass't Attorney General, Helena, Montana

      For Respondent:

          Kathleen Hufstetler, Lincoln County Public Defender,
          Libby, Montana

Submitted on Briefs:   January 26, 1995

Decided:   March 30, 1995

Filed:

_____
           Clerk

Justice W. William Leaphart delivered the Opinion of the Court.


The State of Montana appeals from an order of the Nineteenth Judicial District Court, Lincoln County, suppressing evidence in a criminal case against Steven Richard Stubbs (Stubbs) We reverse.

BACKGROUND

The facts are essentially undisputed. Late on the night of July 3, 1993, Lincoln County Reserve Deputy Steven Boyer (Boyer) was patrolling east of Libby when he observed a car rapidly approaching him from behind. Boyer testified that he was traveling 45 miles per hour in an area with a 45 mile per hour speed limit when the car passed him. Boyer also observed the car weaving across the center line and fog line.

He attempted to pull the car over by activating his overhead lights, but the driver of the car would not pull over. Eventually, Boyer flashed his high beams, activated his siren, air horn, and spot light in attempts to get the car to pull over. Boyer testified that the car did not start to slow down until Boyer accelerated and pulled out alongside it. The car then turned off the highway onto a county road and stopped approximately 100 feet up the road. Boyer testified that the car travelled about three or four miles from the time he activated his overhead lights until the car finally stopped.

Boyer informed the dispatcher that he was pulling over a person possibly driving under the influence. After stopping, Boyer

approached the car on foot.  As he approached, Boyer noticed the driver fumbling around and looking towards the passenger seat. Boyer shined his flashlight into the vehicle where he could see that Stubbs, the driver, was the lone occupant.  Boyer also saw handguns on the passenger side, several rounds of ammunition on the dash, and an empty pistol holster.

Boyer ordered Stubbs out of the car at gunpoint and handcuffed him.  He then did a pat down search of Stubbs and retrieved several rounds of ammunition from his pants pocket and a small brass pipe from his coat pocket which Boyer seized as drug paraphernalia. Boyer testified that after handcuffing Stubbs and having him turn around, he smelled alcohol on Stubbs' breath, Stubbs' speech was slurred, his eyes were bloodshot, and he was having trouble standing erect.  Boyer did not have Stubbs perform any field sobriety tests.  Boyer arrested Stubbs for driving under the influence of alcohol or drugs and for possession of drug paraphernalia.  After Stubbs was placed in custody, officers discovered a plastic bag containing marijuana which was not discovered at the roadside.  Stubbs later submitted to a blood test to determine the amount cf intoxicants in his system.

Stubbs was charged with the following misdemeanors: possession of dangerous drugs for the possession of .05 grams of marijuana, possession of drug paraphernalia, and driving under the influence.  On January 28, 1994, Stubbs was convicted on all charges after a bench trial in the Justice Court of Lincoln County. Stubbs appealed his conviction to the District Court for a trial de

3

novo.  Prior to his trial in District Court, Stubbs moved to suppress all the physical evidence Boyer seized, and all evidence procured after Boyer arrested Stubbs.

On May 12, 1994, the court conducted a hearing on Stubbs' motion to suppress.  On May 17, 1994, the court issued its order suppressing evidence.  The court concluded that the seizure of the brass pipe was unauthorized and that the pipe had some influence on Boyer's determination that Stubbs was driving under the influence. Accordingly, the court suppressed all evidence seized prior to, or as a result of Stubbs' arrest.  The State appeals from this order.

The sole issue raised on appeal is whether the District Court erred in suppressing evidence gathered against Stubbs.

### STANDARD OF REVIEW

We review a district court's ruling on a motion to suppress to determine whether there is substantial credible evidence to support the court's findings of fact, and whether the court correctly applied the findings as a matter of law.  State v. Rushton (1994), 264 Mont. 248, 254, 870 P.2d 1355, 1359. We have also stated that in reviewing a district court's ruling on a motion to suppress, we determine whether the court's interpretation and application of the law is correct.  State v. Pastos (Mont. 1994), 887 P.2d 199, 201, 51 St.Rep. 1441, 1442; citing State v. McCarthy (1993), 258 Mont. 51, 55, 852 P.2d 111, 113.

### DISCUSSION

Stop and Frisk

At the suppression hearing, both parties and the District

4

Court analyzed this case as a "stop and frisk" case. On appeal, the parties continue to argue this case as a stop and frisk case. Therefore, we first discuss stop and frisk searches and seizures.

We note at the outset that warrantless searches are considered per se unreasonable under the Fourth Amendment to the United States Constitution. McCarthy, 852 P.2d at 113; citing Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. However, both federal and state law recognize certain exceptions to the warrant requirement. McCarthy, 852 P.2d at 113; citing California v. Acevedo (1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619; and State v. Evjen (1988), 234 Mont. 516, 756 P.2d 708.

One recognized exception to the warrant requirement is the stop and frisk. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. A Montana statute authorizes the use of a stop and frisk, and this Court has recognized stop and frisk searches as an exception to the warrant requirement. Section 46-5-402, MCA; State v. Gopher (1981), 193 Mont. 189, 192, 631 P.2d 293, 295; State v. Kills On Top (1990), 243 Mont. 56, 83, 793 P.2d 1273, 1291.

An officer may conduct a stop and frisk without having probable cause to arrest the suspect. Generally, the stop and frisk is performed in the interests of crime detection and in the interests of protecting the investigating officer. Terry, 392 U.S. at 22-23. The United States Supreme Court has stated that "in determining whether the [stop and frisk] seizure and search were 'unreasonable' our inquiry is a dual one - whether the officer's

5

action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20.

The United States Supreme Court has had occasion to apply the Terry "stop and frisk" rationale to vehicle stops. In Michigan v. Long (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201, the Court addressed a situation not unlike that in the present case. The hour was late and area rural. Long was driving his automobile at excessive speed, and his car swerved into a ditch. The officers had to repeat their questions to Long, who appeared to be under the influence of some intoxicant. The officers did not frisk Long until they noticed that there was a large knife in the interior of the car into which Long was about to reenter. Their subsequent search of the car was restricted to those areas to which Long would generally have immediate control, and that could contain a weapon. Citing Pennsylvania v. Mimms (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331, the Court noted that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." Long, 463 U.S. at 1047. The Court went on to state:

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect.

Long, 463 U.S. at 1049. The Court in Long held that, in order to protect themselves, the officers were entitled to conduct a Terry

6

search of the area surrounding a suspect as well as the person of the suspect.

The concerns expressed by the United States Supreme Court in Long are particularly relevant in a situation such as this where the suspect was weaving and speeding down a rural highway late at night; where he refused to stop for a distance of some four miles and where he had numerous firearms within his immediate reach.

This Court has established that for a vehicle stop and frisk to be valid at its inception, the State must satisfy two criteria: 1) the officer had objective data from which an experienced officer can make certain inferences, and 2) the officer had a resulting suspicion that the occupant of a certain vehicle was or had been engaged in wrongdoing or was a witness to criminal activity. Gopher, 631 P.2d at 296.

Stubbs concedes that Boyer was justified in conducting a stop and frisk search but contends that Boyer went beyond the permissible scope of the search. In particular, Stubbs argues that Boyer's search was prompted by the fact that he saw an empty holster on Stubbs' passenger seat. Stubbs argues that although the pipe, which was about two and one-half inches long and three-quarters of an inch wide, could have been mistaken for a derringer or another dangerous weapon, it was much too small to have been mistaken for the large pistol missing from the empty holster. In its order granting Stubbs' motion to suppress, the District Court agreed with Stubbs' argument. After concluding that the empty holster gave rise to Boyer's concerns, the District Court stated

7

that "if [Boyer] had asked, 'Where is the gun for that holster?', [Stubbs] would have pointed it out to him on the passenger seat of the car and there would have been no need for a search." However, we believe that the District Court's analysis is much too narrow in light of the facts of this case.

Boyer stopped Stubbs after observing him speeding and weaving over the center line and the fog line. Stubbs only stopped after Boyer had activated numerous lights, siren, and air horn. Stubbs then pulled off on a rural county road. When Boyer approached Stubbs' car, he noticed Stubbs fumbling around on the passenger side of the car. When Boyer looked inside Stubbs' car, he observed several weapons, ammunition, and an empty holster on the passenger side of the car. In this situation, we think it unrealistic to limit the officer's search to a weapon of a specified size or type.

Boyer testified that when he frisked Stubbs, he was looking for weapons. When asked whether he was looking for any particular kind of weapon, he responded, "Not anything in particular, no." Boyer testified that when he felt the lump in Stubbs' jacket pocket, he thought it could have been a knife or a derringer. As we have noted, one purpose of a stop and frisk is to protect the officer from deadly weapons. It would not make sense for an officer attempting to protect himself or herself to ignore a possible weapon simply because it does not feel large enough to fit an empty holster seen in the suspect's car. Ignoring the potential weapon would have been especially absurd in the present case where Boyer had seen more than one weapon in Stubbs' car along with

8

numerous rounds of ammunition.

We next consider whether contraband may be seized when it is discovered during a stop and frisk in which an officer is searching for weapons. Stubbs argues that the seizure of the pipe went beyond the scope of a search for a particular weapon. In support of his argument, he cites to Minnesota v. Dickerson (1993), ___ U.S. ___, 113 S.Ct. 2130, 124 L.Ed.2d 334. Dickerson involved a pat down search in which the officer felt a small plastic bag through the suspect's clothes. After squeezing and manipulating the object, the officer determined that it probably contained drugs, The officer seized the bag, which contained cocaine. The Dickerson Court stated:

> The question presented today is whether police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by Terry. We think the answer is clearly that they may, so long as the officer's search stays within the bounds marked by Terry.

Dickerson, 113 S.Ct. at 2136. The Supreme Court recognized that contraband which is discovered through "plain touch" is subject to seizure the same as that discovered through "plain view." Thus, if a police officer is lawfully engaging in a Terry stop and frisk and pats down a suspect's clothing and feels an object whose contour or mass makes its identity "immediately apparent," there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. Dickerson, 113 S.Ct. at 2137.

The Dickerson Court held that the officer did not stay within the bounds of a Terry search because the officer made no claim that he suspected the object to be a weapon, and he was not immediately

9

able to discern that the material in the plastic bag was drugs without manipulating the contents of the bag. <u>Dickerson,</u> 113 S.Ct. at 2138. The Court stated that:

> Although the officer was lawfully in a position to feel the lump in respondent's pocket, because Terry entitled him to place his hands upon respondent's jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by Terry or by any other exception to the warrant requirement. Because this further search of respondent's pocket was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional.

<u>Dickerson,</u> 113 S.Ct. at 2139.

The situation in the present case is clearly distinguishable. Boyer testified that he thought the lump in Stubbs' pocket could have been a deadly weapon such as a knife or derringer. Therefore, he removed the item to make certain that it was not a deadly weapon, not because he suspected that it was contraband. We hold that this was within the bounds of a proper stop and frisk.

Once the brass pipe was removed, it was in Boyer's plain view We recently stated that a valid plain view seizure requires 1) that the officer have a prior justification for the intrusion, and 2) that the officer inadvertently discover a piece of evidence. State v. Williams (Mont. 1994), 887 P.2d 1171, 1174, 51 St.Rep. 556, 558; citing Coolidge v. New Hampshire (1971), 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583. An additional element not listed in <u>Williams</u> is that the incriminating character of the item seized must be apparent. State v. Hembd (1989), 235 Mont. 361, 369, 767 P.2d 864, 869.

10

We have already determined that Boyer was justified in performing the pat down search and removing the pipe from Stubbs' jacket pocket. Boyer testified without contradiction that he was searching for weapons on Stubbs' person, and there is no indication that the search was used as a pretext to discover illicit drugs or paraphernalia. This is supported by the fact that Boyer did not seize a plastic bag of marijuana which was later seized during a custodial search. Thus, we conclude that Boyer inadvertently discovered the pipe. Finally, the U.S. Supreme Court has examined how apparent the incriminating nature of the seized item must be. See Texas v. Brown (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502. In upholding the seizure of an opaque balloon containing illegal drugs, the Brown Court rejected the argument that for the incriminating nature of a seized item to be apparent, the officer must have a near certainty that the item is illicit. Brown, 460 U.S. at 741. The Court held that it was sufficient that the officer had probable cause to believe that the balloon in plain view held illicit drugs. Brown 460 U.S. at 743. We hold that Boyer, like the officer in Brown, had probable cause to conclude that the brass pipe was drug paraphernalia as defined in § 45-10-101(1)(k), MCA.

We hold that the District Court erred in concluding that Boyer exceeded the scope of a stop and frisk search when he removed the brass pipe, and that the plain view doctrine justified Boyer's seizure of the pipe.

11

<u>Search Incident to an Arrest</u>

Stubbs advances an alternative argument under which he contends that we must affirm the District Court's suppression of the evidence. Stubbs argues, as he did in the District Court, that Boyer actually placed him under arrest before the search. He argues that the "arrest" was made without probable cause, and therefore, all subsequent fruits of the searches conducted after the flawed arrest must be suppressed. The State argues that Stubbs did not file a cross-appeal, and therefore this Court cannot address the issue. The record discloses that the alternative basis for suppression was argued at the District Court but was not addressed by that court due to its erroneous reliance on the stop and frisk rationale. However, we have held that we will affirm a district court's decision, if correct, regardless of the district court's reasoning in reaching its decision. Hagan v. State (1994), 265 Mont. 31, 35, 873 P.2d 1385, 1387 (citations omitted). In <u>Hagan,</u> we upheld the district court's decision in favor of the State on a different basis than that used by the district court, despite the fact that the State had not cross-appealed. <u>Hagan</u>, 873 P.2d at 1387. Here, if Stubbs were improperly arrested, then the evidence seized subsequent to the arrest is the fruit of an illegal arrest, and the District Court's order suppressing the evidence would be correct. Thus, we will address Stubbs' alternative argument concerning search incident to an arrest.

Stubbs argues that when Boyer pointed his weapon at Stubbs and placed handcuffs on him, that Stubbs was under arrest. Stubbs

12

argues that, at that time, Boyer did not have probable cause to arrest him for driving under the influence, possession of drug paraphernalia, or possession of dangerous drugs

We note that several courts have held that pointing a weapon at a suspect and placing him in handcuffs, while increasing the intrusiveness of a Terry-type search, does not necessarily amount to an arrest requiring probable cause.  See U.S. v. Perdue (10th Cir. 1993), 8 F.3d 1455, 1463; U.S. v. Smith (7th Cir. 1993), 3 F.3d 1088, 1094; U.S. v. Crittendon (4th Cir. 1989), 883 F.2d 326, 329; U.S. v. Taylor (9th Cir. 1983), 716 F.2d 701, 709; State v. Lovato (N.M. App. 1991), 817 P.2d 251, 256; State v. Clevidence (Ariz. App. 1987), 736 P.2d 379, 383.

However, none of these cases interpreted an arrest statute similar to our own.  Section 46-6-104(1), MCA, states:  "An arrest is made by an actual restraint of the person to be arrested or by the person's submission to the custody of the person making the arrest."  We agree with Stubbs' position that by placing Stubbs in handcuffs at gunpoint, Boyer actually restrained Stubbs and arrested him.  However, we disagree with Stubbs' contention that the arrest was improper.

Section 46-6-311(1), MCA, provides:

[a] peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest.

Boyer had more than a reasonable suspicion of criminal activity when he pulled Stubbs' car over and proceeded to search.  Boyer had

13

probable cause to arrest Stubbs for speeding, reckless or careless driving (§§ 61-8-301(1) (a) and 61-E-302, MCA), and for eluding a peace officer (§ 61-8-301(1)(b), MCA). Given the facts that Boyer observed Stubbs speeding, driving recklessly and eluding an officer, and had seen numerous weapons in Stubbs' vehicle, Boyer had probable cause to arrest Stubbs and had a reasonable justification for searching him on the scene.

Finally, an officer conducting a search incident to a valid arrest may search the arrestee to protect the officer from attack. Section 46-5-102(1), MCA. A search to protect the officer from attack necessarily includes a search for weapons. Thus, our reasoning upholding a stop and frisk search and seizure is also applicable in upholding the search incident to arrest.

For the foregoing reasons, we reverse the order of the District Court suppressing the evidence and remand for trial.

_____
Justice

We concur.

_____
Chief Justice

_____

_____

_____

14

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's conclusion that the seizure of Steven Stubbs' brass pipe by Deputy Steven Boyer was permissible pursuant to the stop-and-frisk exception to the warrant requirement under either the Fourth Amendment to the United States Constitution, or Article II, Section 11, of the Montana Constitution.

The majority correctly notes that our standard of review is whether there was substantial credible evidence to support the District Court's findings, but then ignores that standard of review by substituting itself for the District Court as the finder of fact. This is particularly objectionable since the District Court's factual findings were the basis for its application of the restrictive language set forth in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889.

For example, in Terry, the Supreme Court upheld the validity of a protective search for weapons in the absence of probable cause to arrest where there is an articulable suspicion that an individual is armed and dangerous, but restricted the circumstances permitting such a search and the scope of any search conducted under these circumstances. Here, Stubbs does not disagree that a stop-and-frisk search was justified in the first instance. He contends that the search of his pocket and withdrawal of a brass pipe exceeded the permissible scope of the search because it was plainly not the weapon with which the investigating officer was

15

concerned when he commenced the search. In that regard, the Supreme Court stated in *Terry* that:

> This Court has held in the past that a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. *Kremen v. United States,* 353 u.s. 346 (1957) ; *Go-Burt Importing Co. v. United States,* 282 U.S. 344, 356-358 (1931); see *United States v. Di Re,* 332 U.S. 581, 586-587 (1948). The scope of the search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible. *Warden v. Hayden,* 387 U.S. 294, 310 (1967) (Mr. Justice Fortas, concurring); see, *e.g., Preston v. United States,* 376 U.S. 364, 367-368 (1964); *Agnello v. United States,* 269 U.S. 20, 30-31 (1925).
>
>     '   *   *
>
>     . . And in determining whether the seizure and search were "unreasonable" our inquiry is a dual one-- whether the officer's action was justified at its inception, <u>and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.</u>

*Terry,* 392 U.S. at 17-20 (emphasis added).

In *Terry,* the court went on to add that:

> A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. *Warden v. Hayden,* 387 U.S. 294, 310 (1967) (Mr. Justice Fortas, concurring). . . .
>
>     ●   ●   ●   ●
>
>     ● . Thus, evidence may not be introduced if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation. *Warden v. Hayden,* 387 U.S. 294, 310 (1967) (Mr. Justice Fortas, concurring).
>
>     . . . The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover

16

guns, knives, clubs, or other hidden instruments for the assault of the police officer.

*Terry,* 392 U.S. at 25-29.

The significance of the above language is that in this case, it was a fact-finding function of the District Court to determine whether when Officer Boyer discovered and removed a brass pipe from Stubbs' pocket he was acting within the scope of his original justification for frisking Stubbs. In performing that fact-finding function, after listening to the direct testimony and cross-examination of Officer Boyer, the District Court found that:

> Office Boyer saw a holstered gun on the Defendant's passenger seat and an <u>empty</u> holster on the same seat (of a size sufficient to hold a fair-sized sidearm). . . .
>
> Officer Boyer made it clear that his apprehension was created by the empty holster on the seat of the car, coupled with what appeared to be movement by the Defendant of the Defendant's hands just before Officer Boyer ordered the Defendant to place his hands in view, and the absence of the sidearm that belonged in the empty holster. In the course of the patdown search, Officer Boyer found a small "marijuana" pipe in the Defendant's jacket pocket, as well as some rounds of .38 ammunition in the defendant's trouser pocket. The pipe was about 2½ inches long with an outside diameter of about 3/4 of an inch . . .
>
> Officer Boyer's "articulable suspicion" was that the empty holster gave rise to concern that the Defendant may still have that weapon. . Once Officer Boyer commenced his search, however, he did it in the manner that Officer Byrnes had taught him, i.e., a custodial search. The custodial search exceeded the scope of *Terry,* and the evidence acquired by that search should be suppressed.

The District Court's finding that removal of a two and one-half inch long brass pipe with a three-quarter inch diameter from Stubbs' pocket was beyond the scope of a pat-down search,

*17*

justified by concern about the presence of a firearm with a four to six inch barrel, is fully supported by substantial evidence in the record.

While the majority chooses that portion of Boyer's testimony which indicates he was looking for weapons at the time he frisked Stubbs, the District Court was justified in relying on that part of Boyer's testimony which indicated that his sole justification for frisking Stubbs was the **missing** revolver from the empty holster on the front seat of Stubbs' car. In response to the following question during cross-examination, Officer Boyer gave the following answer :

Q. Why did you think there might be a weapon?

A. Well, because of the large amount of ammunition that was on the dash, on the floor, on the seats. There were two guns on the front seat that I could see, one in a holster and an empty holster and I didn't know where the gun was that belonged in the other holster, the empty holster.

Furthermore, the State's own evidence established that a two and one-half inch long brass pipe could not reasonably be mistaken for a weapon.

In an effort to show that Boyer's removal of the brass pipe was reasonable under the circumstances, the County Attorney produced LaBeth Spain as a witness at the suppression hearing. Ms. Spain is an investigator for the Lincoln County Public Defender's Office who had prior training as a police officer. She was asked to demonstrate for the court a "pat-down search" and **remove** suspicious objects from the pockets of the person she searched.

18

Significantly, the person she searched in open court had a pipe similar or identical to the one taken from Stubbs in his left rear pocket. Spain did not find it necessary to remove the pipe as part of a pat-down search for potential weapons.

The District Court's finding that seizure of Stubbs' brass pipe was not reasonably related to the original justification for frisking Stubbs is supported by the evidence presented at the District Court's suppression hearing, and therefore, should be affirmed. Based on those findings, the pipe should have been suppressed pursuant to the U.S. Supreme Court's decision in *Terry v. Ohio* and could not have formed any part of the basis for Stubbs' arrest.

*Michigan v. Long* (1983), 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201, does not support the majority's conclusion in this case. The issue in that case was whether a search pursuant to the stop-and-frisk principle is limited to the subject's person, or may be extended to those areas of a vehicle which are within the subject's immediate control. After holding that the principle extended to those areas of the vehicle within the subject's immediate control, the Supreme Court allowed seizure of contraband which was in plain view. Stubbs' brass pipe was not in Officer Boyer's plain view until he removed it from Stubbs' pocket.

Neither does *Minnesota v. Dickerson* (1993), 113 S. Ct. 2130, 124 L. Ed. 2d 334, support the majority's decision. In that case, the Supreme Court limited seizure of contraband pursuant to a

19

stop-and-frisk search to only those items which are immediately identifiable based on touch.  The court specifically held as follows :

> Where, as here, "an officer who is executing a valid search for one item seizes a different item," this Court rightly "has been sensitive to the danger . . . that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will."  Texas v. Brown, **460** U.S., at 748, 103 S.Ct., at 1546-1547[, 75 L.Ed.2d 502] (Stevens, J., concurring in judgment).  Here, the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to "[t]he sole justification of the search [under Terry:] . . . the protection of the police officer and others nearby."  392 U.S., at 29, 88 S.Ct., at 1884[, 20 L.Ed.2d 889].  It therefore amounted to the sort of evidentiary search that Terry expressly refused to authorize . . .

*Dickerson: 113* S. Ct. at 2138-39.

Here, although Boyer was capable of determining, based on his frisk of Stubbs, that the brass pipe in Stubbs' jacket pocket was not the weapon with which Stubbs was concerned, he had no reason, according to his testimony, to suspect that it was a pipe. Therefore, *Dickerson* did not allow its seizure.

The majority bases its conclusion on Boyer's testimony that he thought the lump in Stubbs' pocket could have been a deadly weapon, such as a knife or a derringer.  That testimony was contradicted by other evidence, including the demonstration offered by the State in the District Court's presence.  By basing its decision on some evidence to the exclusion of other evidence, the majority has engaged in a balancing act reserved for the finder of fact--in this case, the District Court.

Furthermore, I would not, as the majority has done, consider the merits of a search pursuant to an arrest that by the officer's own admission had not been made. For good measure, the majority concludes that in addition to authorization under stop-and-frisk principles, Officer Boyer was justified in searching Stubbs' pocket pursuant to a valid arrest. However, Boyer testified at the suppression hearing that he had made no arrest of Stubbs at the time that he withdrew the brass pipe from his pocket. More importantly, the County Attorney represented to the District Court that he was not justifying the search of Stubbs based upon a valid arrest. The County Attorney also conceded to the District Court that the only basis for the frisk of Stubbs was the missing gun from the holster on the front seat of Stubbs' vehicle. The following discussion was had:

> THE COURT: The fine distinction that I'm trying to make, the only thing that he was concerned about is the missing, the holster. Nothing else really is giving him a basis for the frisk.

> MR. SPENCER: That is the basis

> THE COURT: Just a DUI stop but there is enough there for him to do what he did. I don't have a problem with that. The problem that I have is he should only be looking for something large enough for that holster and that is different than being concerned about this person who may be dangerous to him, better look out for himself. That is a different situation.

> The standard reads all the same. And Terry reads it from the standpoint -- Terry is not a DUI stop.

> MR. SPENCER: I agree that the gun, the missing gun triggers it. If you don't have the missing gun, you don't really have a reason to do what the officer did. That is the trigger.

21

In other words, the majority has not only substituted itself for the fact finder in this case, it has *sua sponte* raised issues that were never raised in the District Court, and therefore, should not be the basis for its decision.

For these reasons, I dissent from the majority opinion. I would affirm the order of the District Court suppressing the item seized from Stubbs' pocket during the course of Boyer's pat-down search, and based on Boyer's testimony that the pipe was part of the basis for his arrest of Stubbs, I would also affirm the remainder of the District Court's order.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

_____
Justice

22