IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA,
*Appellee,*

*v.*

ANTHONY BENARD PRIMOUS,
*Appellant.*

No. 1 CA-CR 15-0181
FILED 5-5-2016

Appeal from the Superior Court in Maricopa County
No. CR2012-005697-001
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Carlos Daniel Carrion
*Counsel for Appellant*

_____

**OPINION**

Presiding Judge Peter B. Swann delivered the opinion of the court, in which Judge Lawrence F. Winthrop and Judge Donn Kessler joined.

_____

**S W A N N**, Judge:

**¶1**        Defendant Anthony Benard Primous appeals the superior court's denial of his motion to suppress marijuana found when police frisked him for weapons. Although we reject frisks of lawfully detained individuals' companions as a matter of course, we hold, based on the totality of the circumstances here, that the frisk was justified and the seizure of the marijuana was lawful. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        On February 8, 2012, at approximately 10:15 a.m., five police officers, including Officers Ohland and Casillas, arrived at a Phoenix apartment complex in a neighborhood known for violent crimes. They were looking for an individual who had an outstanding felony arrest warrant, acting on information that the individual frequented the area, carried weapons, and sold drugs and weapons.

**¶3**        Ohland and Casillas approached a group of four men gathered outside one of the apartments. The officers noticed surveillance cameras on the apartment. Two of the men were standing; two others were seated, including Defendant, who held a young child on his lap. The group appeared to be talking. Defendant did not match the description of the subject of the arrest warrant.

**¶4**        Ohland and Casillas identified themselves as police officers and Ohland, who was dressed in plainclothes with a badge on the outside of his shirt, asked the men how they were doing. Both officers noticed that one of the standing men appeared nervous. When that man noticed the other three officers approaching from a different direction, he ran and those officers gave chase. The remaining men did not move. Defendant remained seated with the child. He did not exhibit any nervous behavior or make any sudden moves, and he was not visibly armed.

**¶5**        Ohland immediately began patting down the remaining men for weapons. One of the men (not Defendant) either volunteered or

was found to be carrying a small plastic bag of marijuana in his shorts pocket. Ohland then frisked Defendant and felt an object in his shorts pocket that had the same size and consistency as the just-recovered drugs. Ohland removed the object from Defendant's pocket and confirmed that it was a baggie of marijuana.

¶6        The state prosecuted Defendant for misdemeanor possession of marijuana. Defendant moved to suppress the marijuana as the product of an unlawful search. After holding an evidentiary hearing that established the foregoing facts, the court denied Defendant's motion. The court held that "[b]ased on the totality of the circumstances, [the] officers had a reasonable suspicion that criminal activity may be afoot," and "[a]s a result of the one individual who ran, coupled with the reason for [the officers'] encounter with the group, the dangerousness of the area, the number of individuals remaining compared to the number of officers, and the cameras, [the] officers appropriately decided to perform a pat down search for officer safety."

¶7        The matter proceeded to a bench trial, at the conclusion of which the court found Defendant guilty and placed him on one year of unsupervised probation. Defendant appeals, challenging the denial of the motion to suppress.

## DISCUSSION

¶8        We review the superior court's factual findings for abuse of discretion, but review de novo its legal determination that the search was lawful. *State v. Gilstrap*, 235 Ariz. 296, 297, ¶ 6 (2014).

¶9        The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV; *see also* Ariz. Const. art. II, § 8. A "stop and frisk" in an on-the-street encounter is permissible under the Fourth Amendment when two conditions are met. *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). First, to support the stop, law enforcement must "reasonably suspect[ ] that the person apprehended is committing or has committed a criminal offense." *Id.* Second, to support the frisk, law enforcement must "reasonably suspect that the person stopped is armed and dangerous." *Id.* at 326-27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The standard is an objective one. *Id.* at 21-22. "[D]ue weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the

specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 27.

¶10          An individual's presence in a dangerous neighborhood is not, by itself, sufficient to establish a reasonable, particularized suspicion that he is committing or has committed a crime. *Brown v. Texas*, 443 U.S. 47, 52 (1979). That was the situation when Ohland and Casillas first approached Defendant. Defendant was seated with a child in front of a residence, in daylight hours, engaged in conversation with a few others. He exhibited no evasive or aggressive behavior, was not visibly armed, and neither he nor, apparently, the others in the group matched the description of the dangerous person the officers sought. His mere presence outside of a camera-outfitted apartment in a high-crime neighborhood was insufficient to create a reasonable suspicion that he was committing or had committed a crime.

¶11          But then one of Defendant's companions fled, and another was discovered to have a small baggie of marijuana in his pocket. Unprovoked flight "is not necessarily indicative of wrongdoing, but it is certainly suggestive of such," and it may be considered in connection with the character of the neighborhood. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). And knowing possession of marijuana is often a crime. A.R.S. § 13-3405(A)(1). The question is whether the suggestion of wrongdoing created by Defendant's companions justified a frisk of Defendant, who remained seated and gave no indication of complicity in either the flight or the drug possession.

¶12          In similar circumstances, some jurisdictions have permitted officers to frisk a lawfully detained person's companions as a matter of course. *See Perry v. State*, 927 P.2d 1158, 1163-64 (Wyo. 1996) (collecting cases). We previously expressed approval for such a rule in dictum in *State v. Clevidence*, 153 Ariz. 295, 298 (App. 1987).[1] But we reject it now. Like the Sixth Circuit, "we do not believe that the *Terry* requirement of reasonable suspicion under the circumstances . . . has been eroded to the

---

[1]          In *Clevidence*, we cited *United States v. Berryhill*, 445 F.2d 1189 (9th Cir. 1971), for the proposition that "[t]he right to a limited search extends to a suspected criminal's companions at the time of arrest." 153 Ariz. at 298. In *United States v. Bell*, 762 F.2d 495, 499 (6th Cir. 1985), the Sixth Circuit specifically rejected *Berryhill*. Recently, the Ninth Circuit clarified that *Berryhill* does not extend to *Terry* stops, but rather is limited to searches incident to arrest. *United States v. I.E.V.*, 705 F.3d 430, 437 n.4 (9th Cir. 2012).

point that an individual may be frisked based upon nothing more than an unfortunate choice of associates." *United States v. Bell*, 762 F.2d 495, 499 (6th Cir. 1985) (citation omitted). This approach is consistent with *Ybarra v. Illinois*, in which the Supreme Court invalidated the frisk of an apparently innocuous bar patron during the execution of a search warrant on the bartender and bar, holding that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." 444 U.S. 85, 88, 91 (1979).

¶13    The absence of a *per se* rule authorizing frisks of a suspect's companions does not, however, end the inquiry. We cannot say that the character or conduct of a person's companions has *no* bearing on the question whether officers may frisk the person. *Bell*, 762 F.2d at 500 ("[T]he fact of companionship . . . is not irrelevant to the mix that should be considered in determining whether the agent's actions were justified."). Companionship with a suspected criminal may, in view of the totality of the circumstances, justify a protective stop and frisk even absent a particularized reasonable suspicion that the person to be searched is committing or has committed a crime. *See, e.g., Trice v. United States*, 849 A.2d 1002, 1004, 1008-09 (D.C. App. 2004) (upholding stop and frisk of person seen walking with stabbing suspect minutes after the crime); *United States v. Flett*, 806 F.2d 823, 827-28 (8th Cir. 1986) (upholding stop and frisk of person wearing gang attire in home of known gang member charged with narcotic violation); *see also* 4 Search & Seizure § 9.6(a), Westlaw (database updated Oct. 2015) ("This raises the question of whether the frisk-of-companion rule should be viewed as only permitting a frisk when the companion himself could have been legitimately stopped for investigation. Most likely not, for this would not reach all cases in which the arresting officers would be under a reasonable apprehension. Even if the companion is not sufficiently suspected so that he could legitimately be seized for investigation, the circumstances may nonetheless indicate that the officer should take appropriate precautions."). The focus of the inquiry becomes officer and public safety. *See* 4 Search & Seizure § 9.6(a). In *Arizona v. Johnson*, for example, the Supreme Court held that the driver and all passengers of a vehicle may be detained during a traffic stop, even absent cause to suspect their involvement in criminal activity, if the police "harbor reasonable suspicion that the person subjected to [a] frisk is armed and dangerous." 555 U.S. at 327. In assessing potential dangerousness, the police may consider factors such as the nature of the person's companionship with a suspected criminal, the environment, and the number of officers present. 4 Search & Seizure § 9.6(a).

¶14　　　　Despite Defendant's passivity and the absence of any objective evidence of criminal collusion with his companions, we cannot say that Ohland unreasonably suspected that Defendant might be armed and dangerous. Ohland knew that he was in a dangerous neighborhood looking for a dangerous individual who dealt drugs and weapons. He knew that Defendant had just been talking with several men, one of whom had fled without provocation and another of whom possessed marijuana. He also knew that he was in view of cameras and that he and Casillas were outnumbered by Defendant and his group. On these facts, Ohland justifiably frisked Defendant for weapons. And under the "plain feel" doctrine, he lawfully removed the baggie of marijuana from Defendant's pocket. *See Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) ("If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context."). The superior court did not err by denying Defendant's motion to suppress the marijuana.

## CONCLUSION

¶15　　　　For the reasons set forth above, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED : ama