736 P.2d 379

**STATE of Arizona, Appellee,**

v.

**Raymond L. CLEVIDENCE, Appellant.**

**Nos. 1 CA–CR 9533, 1 CA–CR 9534.**

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 8, 1987.

Review Denied May 5, 1987.

296

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., John B. Barkley, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James H. Kemper, Carol Carrigan, Deputy Public Defenders, Phoenix, for appellant.

## OPINION

BROOKS, Judge.

Appellant (defendant) appeals from the convictions and sentences imposed on one count of Possession of Dangerous Drugs, a class 4 felony, with one prior felony conviction, and one count of Misconduct Involving Weapons, a class 6 felony, with one prior conviction. The trial court found defendant guilty of both charges after submission of the cases upon the record. Defendant was sentenced to the presumptive terms of six years imprisonment on the drug charge and 2.25 years on the weapons charge, to be served concurrently. We affirm.

Two issues are raised on appeal:

1. Did the trial court err in denying defendant's motion to suppress evidence?

2. Did the trial court err in finding defendant guilty of misconduct involving weapons?

## FACTS

Considered in the light most favorable to upholding the judgment of the trial court, the facts are as follows. On December 7, 1984, Phoenix Police Officer Bassett received radio notification that an armed robbery suspect was believed to be riding as a passenger in a certain 1971 Mercury Cougar. Bassett located the vehicle and began to follow it. Meanwhile, other officers notified Bassett of the possibility that a weapon might be in the vehicle. Bassett stopped the vehicle and asked to see the driver's operator's license. The driver (defendant) removed his license from a "trucker's wallet" [an oversized wallet approximately 5½ inches by 3½ inches in size] which was attached to his belt with a chain. Bassett examined the license and at that point recognized defendant as a recently released felon from Arizona State Prison. From a recent police flier, Bassett knew

defendant as a reported member of the Aryan Brotherhood, a prison gang, and had information that defendant should be considered dangerous. The robbery suspect (Hicks) was seated on the front passenger side of the vehicle.

At that point, three other police officers arrived and the two subjects were removed from the vehicle for investigation. Immediately thereafter, a .357 Magnum revolver was found beneath the passenger seat. Hicks was placed under arrest and defendant was handcuffed by Bassett as a safety precaution. Concurrent with the handcuffing of defendant, Bassett conducted a protective "pat-down" or "frisk" for weapons and found none. Bassett then moved defendant to the vicinity of his patrol car to be watched by Officer Martin. At this point, defendant asked Martin to place his wallet, which was dangling from the chain, in his back pocket. Martin agreed to do so but stated that he would have to first check it for weapons. Defendant did not object or otherwise respond to Martin's statement.

Martin then proceeded to feel the defendant's wallet, noted an unidentifiable bulge and opened the zippered compartment. Martin observed drug paraphernalia and called to Bassett. Bassett took the wallet, conducted a further search of it, and discovered a small amount of illegal drugs.

Both subjects were transported to jail. Defendant was "booked" for Possession of a Dangerous Drug and was apparently released on bail.

On May 7, 1985, defendant was formally indicted for Possession of Dangerous Drugs in violation of A.R.S. § 13–3404. (Maricopa County Cause No. CR–148217.) An arrest warrant was issued. At the time of his subsequent arrest on May 22, 1985, defendant was found to be in possession of a knife. This resulted in a second indictment charging Misconduct Involving Weapons in violation of A.R.S. § 13–3102. (Maricopa County Cause No. CR–148633.) An allegation of a prior felony conviction for Second Degree Murder was filed in both cases. Following the trial court's denial of defendant's motion to suppress evidence, defendant waived trial by jury and both matters were submitted to the court based upon the police departmental reports, the exhibits, and the record previously made on the motion to suppress. Defendant was found guilty of both offenses and the allegation of a prior felony conviction was found to be true. Following imposition of sentence, the cases were consolidated for purposes of this appeal.

## DENIAL OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant filed a motion to suppress the drugs and drug paraphernalia seized in the warrantless search of his wallet. Following a suppression hearing, the trial court found:

> Based upon what has been presented and the Court not having the opportunity to feel or view the wallet in order to decide the issue; the Court views the evidence presented with a great deal of scrutiny and does not find that the officers' version of what they believed or what they observed is flawed in any way. The Court accepts their version of the circumstances that existed and concludes that under the circumstances presented, there was legal justification for the officer having gone into the Defendant's wallet and removing the contents that were found.

The trial court denied defendant's motion to suppress the evidence and, after reconsideration of its ruling, affirmed its order. Defendant again moved for reconsideration and, after a further hearing which included an examination of the wallet, the trial court again denied the motion to suppress. Defendant now contends that the trial court committed reversible error in denying the motions. We disagree.

Initially, it must be noted that a trial court's ruling on a motion to suppress will not be reversed on appeal absent clear and manifest error. *State v. Jarzab*, 123 Ariz. 308, 599 P.2d 761 (1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1069, 62 L.Ed.2d 789 (1980).

■ Defendant does not contend that the initial stop of his vehicle was invalid, nor does he argue that Officer Bassett's initial frisk was unreasonable. Bassett was apprised of a potentially dangerous situation and the possible presence of a weapon. Under such circumstances, his actions were reasonable and pass the *Terry* standard for a justifiable stop. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because the initial stop of defendant was proper under *Terry,* Bassett and Martin could then conduct a limited search for weapons reasonably related to the scope of the stop. *Id.* The fact that defendant was a companion to the suspected robber, instead of the primary suspect, does not negate the validity of the stop or frisk due to the totality of the circumstances. *See United States v. Tharpe,* 536 F.2d 1098, 1100 (5th Cir.1976). The right to a limited search for weapons extends to a suspected criminal's companions at the time of arrest. *United States v. Berryhill,* 445 F.2d 1189 (9th Cir.1971). Thus, we find no violation of defendant's constitutional rights in the initial stop or the pat-down search for weapons.

Defendant contends, however, that given the right to pat-down, the officers nevertheless acted unreasonably and exceeded the scope of a *Terry* investigatory stop. In other words, defendant argues that his detention was not merely an investigative stop but constituted an arrest without probable cause.

Defendant relies on *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) and *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) as support for his argument that the officers' conduct amounted to an illegal seizure in the absence of any basis for suspecting him of misconduct. Under the facts here, defendant's reliance is misplaced. In *Brown,* the officers had no reasonable basis to stop the defendant whom they observed simply walking away from another man in an alleyway. The defendant there had exhibited no specific misconduct and there was no reason to believe that the defendant was armed. Here, however, Bassett had considerable prior information concerning suspected criminal activity as well as the presence of a weapon, the defendant's reputation for violence, and his status as a recently released felon.

■ In *Royer,* the defendant's conviction was reversed when the police exceeded the limits of an investigative stop by taking the defendant to a police room at the airport, retaining his ticket and driver's license, and indicating he was not free to leave. The court in *Royer* was careful to state that there is no litmus-paper test for determining when a seizure exceeds the bounds of an investigative stop.

> [T]here will be endless variations in the facts and circumstances, so much variation that it is unlikely that the courts can reduce to a sentence or paragraph a rule that will provide unarguable answers to the question whether there has been an unreasonable search or seizure in violation of the Fourth Amendment.

*Id.* at 506–507, 103 S.Ct. at 1329, 75 L.Ed.2d at 242. However, the Court also stated that reasonable suspicion of criminal activity warrants a temporary detention for questioning on less than probable cause "where the public interest involved is the suppression of illegal transactions in drugs or of any other serious crime." *Id.* at 498–99, 103 S.Ct. at 1324, 75 L.Ed.2d at 237. Judgment must be rendered absent a bright line rule and, as our supreme court recently stated, "we will not attempt to delineate the precise moment at which a valid *Terry* stop is transformed into an arrest." *State v. Winegar,* 147 Ariz. 440, 447, 711 P.2d 579, 586 n. 5 (1985). Such a determination necessarily depends on the particular circumstances and we think that here, unlike *Royer* or *Winegar,* the trial court cannot be faulted in concluding that the limits of a *Terry* stop were not exceeded.

■ In *State v. Aguirre,* 130 Ariz. 54, 633 P.2d 1047 (App.1981), Division 2 of this court found that a suspect detained, frisked, handcuffed, and placed in a patrol car was not under arrest. When engaged in an investigation, as Bassett and Martin were in the instant case, an officer may

detain a person under circumstances that would not justify an arrest. *Id.; State v. Taras,* 19 Ariz.App. 7, 504 P.2d 548 (1973).

The fact that defendant was not free to leave does not, in and of itself, transform a valid investigatory detention into a traditional arrest with its probable cause requirement. *State v. Swaite,* 33 Wash.App. 477, 656 P.2d 520 (1982). Further, the Ninth Circuit Court of Appeals stated in *United States v. Taylor,* 716 F.2d 701, 709 (1983):

> We have previously held that the use of handcuffs, if reasonably necessary, while substantially aggravating the intrusiveness of an investigatory stop, do [sic] not necessarily convert a *Terry* stop into an arrest necessitating probable cause. *See United States v. Bautista,* 684 F.2d 1286 (9th Cir.1982).

Thus at this point in the detention, given the circumstances of this case, we find that the trial court did not abuse its discretion in concluding that defendant was not under arrest but was being detained pursuant to a reasonable investigatory stop.

Defendant next argues that the warrantless search of his wallet was not justified by any recognized legal exception, and that the officers failed to give any articulable reason to justify that search. Having already concluded that the stop and initial frisk comported with *Terry,* the issue now is whether the further search of defendant's wallet was justified. The state responds that the wallet was searched as a precautionary safety measure and thus comes within the ambit of a valid exception to the fourth amendment.

Defendant cites *State v. Mendez,* 115 Ariz. 367, 565 P.2d 873 (1977), for support in asserting that there could have been no reasonable apprehension of personal safety from *any* weapon in the wallet because his hands were handcuffed behind his back. Given his restraints, it is argued that the officers could not reasonably infer that they were in danger from any weapon concealed in the wallet.

In *Mendez,* heroin found in a subsequent search of the defendant's pants pocket was suppressed because the defendant was handcuffed and initially patted-down for weapons with no result. The court stated that once a pat-down for weapons had been conducted and proved negative, "[a]bsent further justification for the search of the defendant, the officer could proceed no further." *Id.* at 369, 565 P.2d at 875. The court cited *Terry* for the rule that a weapons search is limited to that which is necessary to discover weapons which might be used to harm the officer or others nearby. *Terry,* 392 U.S. at 25–26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908. However, defendant overlooks the fact that Bassett and Martin had further justification to search his wallet. First, the wallet was attached to defendant's pants with a chain and he requested that the officers place the wallet in his pocket. When told that the officer would first have to search the wallet, defendant said nothing. Defendant should not now be allowed to argue, in retrospect, that the officers' attempts to comply with his specific request were unreasonable. Secondly, the search of the defendant's wallet was simply a continuation of the initial frisk and thus could be carried out on the same terms—the wallet could reasonably have contained a weapon and the officer had a reasonable belief that it did.

A relevant inquiry here is the nature of the object felt or observed upon the initial pat-down. A further, intrusive search is not permissible where the object felt initially is soft and obviously not a weapon. *State v. Collins,* 139 Ariz. 434, 679 P.2d 80 (App.1983); *see also Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). If the object felt is hard, then the question is whether its size and density is such as to reasonably be perceived as a weapon. Under this approach, courts have upheld searches that uncovered various items other than guns, such as a cigarette lighter. *See Swaite,* 33 Wash.App. 477, 656 P.2d 520 (1982). Defendant testified at the first suppression hearing that his wallet was thin, supple leather and that it was open and the contents fell out when he exited the car, except for the zippered compartment containing the syringe and other drug parapherna-

lia. Taking defendant's testimony as true (disregarding that of the two police officers), the officers had even *greater* justification for searching the wallet since the presence of the syringe (or some questionable object) would have been more obvious in a thin, soft wallet containing few other items. Assuming the officers' description of the wallet is correct (semi-hard leather and full of papers), the police were still justified in opening the wallet once Martin felt a hard, unidentifiable bulge which could have been a weapon.

■ Defendant also argues that even assuming the wallet might have contained a weapon, there was no need to open it because the officers could have adequately protected themselves by merely removing it from his reach for the duration of the stop.[1] A "tactical choice by the police between apparent alternative courses of action cannot be overturned by detached judicial deliberation as long as the course of action taken is in itself reasonable." *Bailey v. United States*, 279 A.2d 508, 510 (D.C.App.1971); *cf. Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). We cannot say that it was unreasonable to search the wallet for weapons simply because in retrospect another course was open. We again emphasize that the wallet was being replaced in defendant's pocket at his own request.

■ We conclude therefore that evidence of the illegal drugs need not be suppressed. Evidence of crimes observed in connection with a legal protective search for weapons can be properly seized. *State v. Damon*, 18 Ariz.App. 421, 502 P.2d 1360 (1972); *cf. State v. Taras*, 19 Ariz.App. 7, 504 P.2d 548 (1973) (evidence of marijuana found during lawful search of vehicle for registration card admissible). Once the drug paraphernalia was seen, as an incident to a legal protective search, there was probable cause to arrest the defendant. If an officer has sufficient information from which he would make an arrest and, as an incident to that arrest, makes a lawful

search, the search is not unreasonable if made before instead of after the arrest. *State v. Valenzuela*, 121 Ariz. 274, 589 P.2d 1306 (1979); *State v. Baker*, 26 Ariz. App. 255, 547 P.2d 1055 (App.1976).

Here, there existed probable cause to arrest the defendant once the drug paraphernalia was found. The further search of the wallet without a warrant was therefore proper as an incident to a lawful arrest based on probable cause to believe the defendant had committed a felony.

The trial court in the instant case demonstrated that it was well-versed in the appropriate legal standards and multiple hearings on the defendant's motion to suppress were conducted. We find no abuse of discretion.

## MISCONDUCT INVOLVING WEAPONS

■ At the time of his arrest on the warrant for possession of dangerous drugs, a double-edged hunting knife approximately six inches in length was found under defendant's shirt. Defendant was charged with violating A.R.S. § 13–3102 which reads in pertinent part:

A. A person commits misconduct involving weapons by knowingly:

\* \* \* \* \* \*

4. Possessing a deadly weapon if such person is a prohibited possessor. . . .

The terms "deadly weapon" and "prohibited possessor" are defined in A.R.S. § 13–3101:

In this chapter, unless the context otherwise requires:

1. "Deadly weapon" means anything designed for lethal use. The term includes a firearm.

\* \* \* \* \* \*

5. "Prohibited possessor" means any person:

\* \* \* \* \* \*

(b) Who has been convicted within or without this state of a felony involving violence or possession and use of a dead-

---

**1.** We note that when the officers later removed the wallet and chain from defendant's belt, they

had difficulty in doing so.

ly weapon or dangerous instrument and whose civil rights have not been restored.

Defendant first argues that the knife should have been suppressed as "fruit" of the alleged illegal search in the drug possession charge. Since we have determined that the search was not unlawful, we need not address this issue.

Defendant next contends that the knife in question is not a "deadly weapon," and that the evidence did not support the judgment of guilt. We disagree. The knife clearly qualifies as a "deadly weapon" under A.R.S. § 13–3101. *State v. Williams,* 110 Ariz. 104, 515 P.2d 849 (1973). Further, the record plainly shows that the defendant previously had been convicted and sentenced for Second Degree Murder, a crime involving violence. He was, therefore a "prohibited possessor" within the meaning of A.R.S. § 13–3101(5)(b).

## CONCLUSION

For the foregoing reasons the judgments and sentences of the trial court are affirmed.

CONTRERAS, P.J., and FROEB, C.J., concur.