821 P.2d 250

**STATE of Arizona, Appellee,**

v.

**Michael Frederick OLIVER, Appellant.**

**No. 1 CA–CR 90–1729.**

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 10, 1991.

Grant Woods, Atty. Gen., by Paul J. McMurdie, Chief Counsel, Crim. Div., and Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by John R. Rood, III, Deputy Public Defender, Phoenix, for appellant.

## OPINION

VOSS, Judge.

Defendant Michael Frederick Oliver appeals from his convictions for two counts of aggravated assault, both class 3 felonies, and one count of burglary in the first degree, a class 2 felony, with four prior convictions. He also appeals from the sentences imposed—three consecutive life sentences. We affirm the convictions and the sentences.

## FACTS

The facts viewed in the light most favorable to sustaining the convictions are as follows. In the early morning of August 15, 1988, the victim, Debra Phillips, returned home from her shift as a nurse. Her sister and brother, Rita and Kevin, were already asleep. A man wearing jeans, gray tennis shoes, the victim's pink bathrobe, a yellow T-shirt over his head with eye holes cut out and gloves, came into the bedroom with a knife. He growled like a dog and began to stab Debra in the arm and chest. Rita collided with the man in the hall and was also stabbed. The man then left the house. Kevin called paramedics and Debra and Rita were air evacuated to Scottsdale Memorial Hospital where they both underwent surgery.

Following a police investigation, the defendant was arrested and tried for the offense. The defendant did not testify at trial. His defense was mistaken identity. In addition, he attempted to raise a reasonable doubt about his guilt by showing that Kevin, who was originally a suspect in the case, may have committed the crimes. On appeal the defendant raises the following issues:

1. Did the trial court err in excluding evidence that Kevin was arrested for the crimes charged?
2. Did the trial court err in refusing to strike a juror for cause?
3. Did the trial court err in denying defendant's motion to suppress evidence?

## EVIDENCE OF KEVIN'S ARREST

Prior to the discovery of evidence linking the defendant to the offense, the police questioned and arrested Kevin for the assaults. He was a suspect because his physical description matched that given by the victims of the assailant and his behavior was suspicious. The victims, however, were emphatic that Kevin was not the assailant and the police released him.

The state filed a motion *in limine* requesting that the court exclude evidence of Kevin's arrest pursuant to Rule 403, Arizona Rules of Evidence, arguing it would be confusing to the jury and a waste of time. The defendant made an offer of proof of facts that connected Kevin to the crime.

The court granted the motion in part and denied it in part. The court allowed the defendant to elicit at trial facts connecting Kevin to the crime, but precluded the defendant from introducing evidence regarding police suspicions about Kevin's guilt and the fact that he was arrested for the crimes. On appeal, the defendant argues that the court committed reversible error by depriving defendant of his right to present his complete defense that another person may have committed the crime. We disagree.

A defendant can always show that some person other than the defendant committed the crime. *State v. Renteria,* 21 Ariz.App. 403, 520 P.2d 316 (1974). Thus, where there is evidence of third-party culpability that raises a reasonable doubt as to a defendant's guilt, it should be admitted. *People v. Hall,* 41 Cal.3d 826, 226 Cal.Rptr. 112, 718 P.2d 99 (1986).

However, it is within the sound discretion of the trial court to refuse to admit such evidence when it simply affords a possible ground of suspicion against another. *Renteria*, 21 Ariz.App. at 404, 520 P.2d at 317. The defendant must show that the evidence has an inherent tendency to connect the other person with the actual commission of the crime. *State v. Williams*, 133 Ariz. 220, 230, 650 P.2d 1202, 1212 (1982).

■ In this case, the defendant introduced at trial all of the facts tending to show Kevin's culpability that were part of his offer of proof. He was not denied his right to offer exculpatory evidence. The court excluded evidence that the police considered Kevin a suspect and arrested him. This evidence, if relevant, should be admitted unless its probative value is substantially outweighed by the risk of undue delay, prejudice or confusion. *State v. Oliver*, 158 Ariz. 22, 27, 760 P.2d 1071, 1076 (1988).

The subjective suspicions of the police and their reasons to arrest Kevin are not probative of Kevin's culpability because a mere arrest is not evidence of guilt. *State v. Shuler*, 162 Ariz. 19, 780 P.2d 1067 (App. 1989). Kevin was not on trial. The officer's subjective reasons for arresting and releasing Kevin were not issues before the jury. *See, e.g., Cooper v. State*, 671 P.2d 1168 (Okla.Crim.1983) (not error to refuse to permit evidence of certified copy of information charging another with crime because prosecutor's reason for filing and dismissing criminal charge not issue before jury, thus probative value is outweighed by danger of confusing or misleading jury); *Hamilton v. State*, 91 Ga.App. 299, 85 S.E.2d 557 (1954) (not error to refuse to permit third person to testify that he had been arrested after first trial but before second trial for same offense for which defendant on trial); *Davis v. State*, 54 Ala. App. 115, 305 So.2d 390 (1974) (not error for trial court to refuse to allow introduction of indictment of another party because indictment is but an accusation in writing); *State v. Toney*, 680 S.W.2d 268 (Mo.App. 1984) (not error to refuse to admit evidence that police suspected another man of crime before appellant). A jury could give greater weight to the police suspicions than warranted under the circumstances. Further, the defendant was allowed to present all of his objective evidence of Kevin's culpability. We find no error in the court's refusal to permit evidence of the suspicions of the police and Kevin's arrest.

## REFUSAL TO STRIKE JUROR

■ During voir dire examination, the court asked the following questions and these responses were given:

THE COURT: If you were selected to sit as a juror on this case, would any of you be unable or unwilling to render a verdict based solely on the evidence presented at trial?

Is there anyone here who would be unable to follow the law that I will give you in the instructions, disregarding your own notions about what the law is or ought to be?

I'm sorry. Yes. Would you have difficulty following the law as I give it to you in the instructions?

JUROR M: No, but I have my own notions about what I believe and what I don't that might not coincide with the laws as written.

THE COURT: If your notions and ideas were different than the law that I give you in the instructions, would you be able to set aside your own preconceived notions and follow the law as I give it to you in the instructions?

JUROR M: I couldn't guarantee anything. I'd try.

THE COURT: You would try?

JUROR M: Yes.

THE COURT: All right. That's all we can ask of anyone.

The defendant asked the court to strike Juror M for cause and the court refused. The defendant used a peremptory strike on the juror. The defendant argues that the court erred in refusing to strike the juror for cause. We disagree.

Rule 18.4(b), Arizona Rules of Criminal Procedure provides: "[w]hen there is rea-

sonable ground to believe that a juror cannot render a fair and impartial verdict, the court, on its own initiative, or on motion of any party, shall excuse him from service in the case." The grant or denial of a motion to strike a juror for cause is within the sound discretion of the trial judge whose decision will not be reversed absent an abuse of such discretion. *State v. Comer,* 165 Ariz. 413, 426, 799 P.2d 333, 346 (1990), *cert. denied,* — U.S. —, 111 S.Ct. 1404, 113 L.Ed.2d 460 (1991). The trial judge can observe a prospective juror's demeanor, tenor of answers and expression of feelings. The judge is in the best position to decide whether a juror's opinion is so fixed as to interfere with his decision. *State v. Munson,* 129 Ariz. 441, 443, 631 P.2d 1099, 1101 (App.1981).

Defendant cites *State v. Rodriguez,* 131 Ariz. 400, 641 P.2d 888 (App.1981). In *Rodriguez,* the prospective juror told the trial court that she had recently been burglarized and suffered severe financial losses and was still very upset. She said that she did not know if she could be impartial in light of her experience. Even after the trial court attempted to rehabilitate the challenged juror she stated that she would try to be fair, but that her recent experiences would "still be in the back of my mind." *Id.* at 401, 641 P.2d at 889.

The juror in this case did not express serious doubts or misgivings about his ability to be fair and was adequately rehabilitated by the trial court. The challenged juror stated that he would try to put aside his preconceived notions and follow the law. Unlike the juror in *Rodriguez,* he did not express any hesitancy about his ability to do so. As noted in *Munson,* 129 Ariz. at 443, 631 P.2d at 1101, "[p]eople generally do not speak in absolutes...." If a prospective juror indicates he "believes" he can set aside his personal feelings and follow the court's instructions, it is not necessary that he state that he will do so. *State v. Turrentine,* 122 Ariz. 39, 592 P.2d 1305 (App.1979). We believe the judge received adequate assurances during *voir dire* to indicate the juror would be impartial. *State v. Clayton,* 109 Ariz. 587, 593, 514 P.2d 720, 726 (1973) (juror rehabilitated

who stated "I will try to follow the law the way it is, is all I can say.") We find no abuse of discretion in the court's failure to strike the prospective juror for cause.

## SUPPRESSION OF EVIDENCE

■ The defendant filed a motion to suppress evidence relating to the seizure of his tennis shoes, evidence taken from his residence, blood and hair samples obtained from him, and statements he made to the police—on the grounds that they were obtained as a result of an unlawful arrest. A review of the police investigation does not support this conclusion.

The day after the attack, police searched the victims' residence and backyard and found a yellow T-shirt and Kevin's green T-shirt with blood on it. A butcher knife belonging to Debra and Kevin was found in a yard to the west of the victims. The next day the police found defendant's wallet and shoe prints in the victims' neighbors, the Hallsteds', backyard. They found the victim's pink bathrobe in another yard. The wallet contained a business card belonging to an Arizona parole officer, and an identification card with defendant's physical description, which matched the description of the assailant given by the victims.

The Hallsteds told the police that they did not know the defendant and had not given him permission to be on their property. They also indicated that the shoe prints were located in an area of their yard that they rarely used. The officers did an odometer check to the defendant's residence and determined the distance to be .6 miles. The Hallsteds agreed to file a criminal trespass charge against the defendant.

The defendant's parole officer advised the police that the defendant was on parole from a Michigan conviction for sexual assault with a knife. Three days after the assault, a police officer told authorities in Michigan, "[i]t looks like this guy did it.... We're going to try and arrest him today."

Several days after the assault, defendant's hair and blood samples and finger and palm prints were taken pursuant to court order and defendant's tennis shoes

were seized pursuant to a search warrant. Police observed that the pattern on defendant's shoes was similar to the shoe prints found on the Hallsted property. At that time defendant told the police he lost his wallet at a Burger King on the day of the attack. He also stated that he took a walk in his neighborhood on the night of the attack, but that, he was not in the immediate vicinity of the victims' home. At the end of the interview the defendant was arrested for criminal trespass.

Eight days after the assault the defendant was placed in an in-person lineup pursuant to court order. He told the police he had earlier lied to them and had been in the Hallsteds' yard on the evening of the offense in order to get water from their garden hose. He was arrested on the burglary and aggravated assault charges approximately two weeks later.

The defendant argues that all of the evidence obtained by police should have been suppressed because it was seized as a result of a sham arrest for criminal trespass. We disagree.

A trial court's ruling on a motion to suppress will not be reversed on appeal absent clear and manifest error. *State v. Clevidence*, 153 Ariz. 295, 736 P.2d 379 (App.1987). The search of defendant's residence, the taking of physical evidence and the seizure of the tennis shoes occurred prior to either arrest. This evidence was seized pursuant to a search warrant and order to obtain physical evidence issued in connection with the investigation of the aggravated assaults not the criminal trespass. The defendant does not argue that the search warrant or order were invalid.

Nor does defendant argue that the statements made after his arrest for criminal trespass were involuntary or obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Even if defendant's arrest for criminal trespass was unlawful it would not require suppression of defendant's *voluntary* statements made to the police. The defendant must show that his statements "were obtained by exploitation of the illegality of his arrest." *State v. Winegar*, 147 Ariz. 440, 449, 711 P.2d 579, 588 (1985), citing *Brown v. Illinois*, 422 U.S. 590, 600, 95 S.Ct. 2254, 2260, 45 L.Ed.2d 416 (1975). The court must look to "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." *Id.* Here the defendant's statements were made four days after the arrest and there was no evidence of police conduct to suggest exploitation of an illegal arrest.

We find that the trial court correctly denied defendant's motion to suppress. We need not discuss defendant's contentions regarding his arrest for criminal trespass because the physical evidence was not obtained as a result of that arrest and he has made no showing that his statements were involuntary.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and found none. We note that the sentencing minute entries indicate that the three life sentences are aggravated. However, the defendant was sentenced pursuant to A.R.S. § 13–604.02(A) which mandates a life sentence on each count. Therefore the minute entries should be corrected pursuant to A.R.S. § 13–4036 to reflect that the sentences are not aggravated. The convictions and sentences are affirmed.

TAYLOR, P.J., and KLEINSCHMIDT, J., concur.