904 P.2d 1297

**STATE of Arizona, Appellee,**

v.

**Timothy Scott BLACKMORE, Appellant.**

**No. 1 CA–CR 94–0194.**

Court of Appeals of Arizona,
Division 1, Department C.

June 27, 1995.

As Corrected July 10, 1995.

Review Granted Oct. 24, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, J. Randall Jue, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GRANT, Judge.

Timothy Scott Blackmore ("Defendant") was convicted by a jury of Possession of Dangerous Drugs, a class 4 felony. The trial court suspended imposition of the sentence and placed Defendant on three years probation. He filed a timely notice of appeal from his judgment and sentence. This court has jurisdiction pursuant to Article VI, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1), 13–4031, and 13–4033(A).

## FACTS AND PROCEDURAL HISTORY

Before trial, Defendant moved to suppress all physical evidence and statements he made. He claimed that the evidence and statements were obtained as a result of an illegal arrest. A suppression hearing was held at which Defendant and Officer Wetzel of the Phoenix Police Department testified.[1]

During the evening of April 19, 1992, Officer Wetzel responded to a burglary call. The victims heard someone leave their residence through an open window. The window led to an alley adjacent to the residence. The victims never saw the suspected burglar, but they reported seeing an orange vehicle parked in an alley approximately one block east of their home. Nothing connected the orange vehicle to the burglar.

Before backup arrived, Officer Wetzel went to the alley where the orange car was parked and observed Defendant squatting behind a dumpster. It was dusk at the time. Wetzel drew his gun and ordered Defendant to the ground. He then handcuffed Defendant, helped him to his feet, and began walking him back to the patrol car.

Officer Long arrived in the alley as backup. As Officer Wetzel walked Defendant to

---

1. For the purpose of reviewing the admission of the seized drugs and Defendant's statements into evidence, we consider only the testimony presented at the suppression hearing. *See State v. Flower*, 161 Ariz. 283, 286 n. 1, 778 P.2d 1179, 1182 n. 1 (1989). We also view the facts in a light most favorable to sustaining the trial court's order. *State v. Hamilton*, 173 Ariz. 196, 198, 840 P.2d 1061, 1063 (App.1992).

his patrol car, he told Defendant that "he [was] under investigative detention for a burglary which had just occurred." He then asked Defendant for identification. Defendant responded that his identification was in his wallet which was inside his "fanny pack" on the front passenger seat of his car. Wetzel next asked Defendant if he could enter Defendant's car to get the identification. Defendant consented. Long entered Defendant's car and found the fanny pack on the front passenger seat.[2] He opened the pack and saw a wallet inside. As he removed the wallet, a pill bottle fell out of the pack. The cap was not attached to the bottle, and Long saw a small plastic bag containing a white powdery substance inside. As Long removed the bag, another plastic bag containing a green leafy substance fell out. He then searched through the pack and found a small pipe.

By this time, Officer Wetzel had placed Defendant in his patrol car. After Officer Long returned from Defendant's vehicle, Defendant was arrested and read his *Miranda* rights. Wetzel asked Defendant why he was in the alley. Defendant responded that he was looking for PVC pipe behind the dumpster. He also admitted having "some pot and some crushed white cross" in his vehicle. The record does not indicate that Defendant was anything but cooperative during the initial stop and detention. Police searched the area around the dumpster and the alley, but found no evidence connecting Defendant to the burglary. They did not find the stolen items. The seized white powder tested positive for methamphetamine.

The trial court found the following: the initial stop and detention were appropriate; Defendant gave his consent to police to enter his car and retrieve his identification from his wallet inside the pack; Officer Long observed the methamphetamine in plain view; the methamphetamine generated probable

cause to search for and seize the drugs; and all of Defendant's statements were voluntary. The trial court denied the motion to suppress the physical evidence and Defendant's statements.

## ISSUES

1. Was Defendant's consent to search his vehicle for identification tainted by an illegal arrest?

2. Was Defendant's consent voluntary?

## DISCUSSION

### I. Standard of Review

The trial court's ruling on the motion to suppress will be reversed only for clear and manifest error. *State v. Oliver,* 169 Ariz. 589, 593, 821 P.2d 250, 254 (App.1991).

### II. Detention for Burglary

First we must determine whether an arrest or *de facto* arrest occurred. If Defendant was "under arrest," we must then decide whether probable cause supported the arrest. If the arrest lacked probable cause, we must decide what evidence, if any, must be suppressed as a result of the illegal arrest.

### A. Investigative detention or *de facto* arrest?

The Fourth Amendment protects individuals against unreasonable searches and seizures by requiring that both formal and *de facto* arrests be supported by probable cause.[3] *Michigan v. Summers,* 452 U.S. 692, 700, 101 S.Ct. 2587, 2593, 69 L.Ed.2d 340 (1981). However, even when probable cause is not present, police officers may temporarily detain individuals suspected of criminal activity if the officer can articulate "facts which, taken together with rational infer-

---

2. Officer Long did not testify at the suppression hearing. The state made an offer of proof as to his expected testimony at trial.

3. Defendant argues that his arrest was in violation of both the Fourth Amendment to the United States Constitution and Article 2, Section 8 of the Arizona Constitution. Although the Arizona Supreme Court has found greater protection in the

Arizona Constitution in cases involving the home, Defendant does not argue, and cites no authority for such an interpretation based on the facts of the present case. Therefore, we will only consider the Fourth Amendment to the United States Constitution in reviewing Defendant's argument. *See State v. Wedding,* 171 Ariz. 399, 407, 831 P.2d 398, 406 (1992).

ences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

■ Defendant does not contend that Officer Wetzel lacked the requisite reasonable suspicion to detain him temporarily in order to investigate the burglary. Rather, he argues that Wetzel exceeded the scope of the detention authorized by *Terry* and that his detention required probable cause or consent. *United States v. Brignoni–Ponce*, 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975); *Dunaway v. New York*, 442 U.S. 200, 212–13, 99 S.Ct. 2248, 2256–57, 60 L.Ed.2d 824 (1979). Therefore, we consider whether Defendant was under *de facto* arrest for burglary.

[4–6] The state has the burden of demonstrating "that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983). Whether an investigative detention has transformed into a *de facto* arrest "turns upon an evaluation of all the surrounding circumstances to determine whether a reasonable person, innocent of any crime, would reasonably believe that he was being arrested." *State v. Winegar*, 147 Ariz. 440, 448, 711 P.2d 579, 587 (1985); *see also State v. Clevidence*, 153 Ariz. 295, 298, 736 P.2d 379, 382 (App.1987) (whether a person is under arrest depends on the "particular circumstances" surrounding the detention); *Terry*, 392 U.S. at 19, 88 S.Ct. at 1878 ("The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible.") (quoting *Warden v. Hayden*, 387 U.S. 294, 310, 87 S.Ct. 1642, 1651–52, 18 L.Ed.2d 782 (1967); *Royer*, 460 U.S. at 500, 103 S.Ct. at 1325–26 (scope of intrusion depends on "facts and circumstances of each case.").) Relevant factors include the duration of the detention, the extent that freedom of movement is curtailed, and the degree and type of force used. *See, e.g., id.* (an investigatory detention must last no longer than necessary to effectuate the purpose of the stop); *Winegar*, 147 Ariz.

at 447–48, 711 P.2d at 586–87 (*Terry* stops tolerated absent probable cause because "they are brief and as narrowly circumscribed as possible."); *United States v. Huberts*, 637 F.2d 630, 636 (9th Cir.1980) (duration and voluntary nature of detention are critical factors), *cert. denied*, 451 U.S. 975, 101 S.Ct. 2058, 68 L.Ed.2d 356 (1981); *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir.1990) (cooperative suspect forced at gun point to leave vehicle and lie on ground and subsequently handcuffed was found to be under arrest); *United States v. Ricardo D.*, 912 F.2d 337, 340–41 (9th Cir.1990) (holding that an unnecessarily coercive detention was an arrest); *United States v. Robertson*, 833 F.2d 777, 780 (9th Cir.1987) (relevant factors include "the extent to which liberty of movement is curtailed and the type of force or authority employed."). When conducting *Terry* stops, police officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 683–84, 83 L.Ed.2d 604 (1985).

■ During Officer Wetzel's direct examination, the following exchange took place:

Q. And you came up to the defendant in the alley?

A. Yes, I did.

Q. What happened at that time?

A. At that time I didn't know if he—if he was the suspect or not, and I was by myself. So for my own safety I drew my gun out and he came out from behind the garbage can.

He like squatted down behind the garbage can, came out, his vehicle was parked there next to the dumpster, and I ordered him to get on the ground. And I needed to see his hands all [sic] and arms at all times. And that was to keep him from fighting with me, because I don't know if he was the suspect of a burglary or not.

Officer Wetzel testified that he drew his gun on Defendant and ordered him to the ground because he feared for his own safety. However, Wetzel then proceeded to handcuff De-

fendant before frisking[4] or questioning him. We agree that there are situations where safety concerns would require a police officer to handcuff a suspect and remove him from the scene of the initial stop in order to continue an investigation. *See, e.g., Royer,* 460 U.S. at 504–05, 103 S.Ct. at 1328–29 (recognizing that safety and security concerns may justify moving a suspect from the site of the initial stop); *Eberle v. City of Anaheim,* 901 F.2d 814, 819 (9th Cir.1990) (finding no arrest where safety concerns caused by unruly, crowd prompted suspect's removal to stadium security office). Although police procedures do not have to be the least intrusive available, they must be reasonably necessary under the circumstances. *See Royer,* 460 U.S. at 500, 504, 103 S.Ct. at 1325–28.

In the present case, Officer Wetzel never articulated why he could not have frisked and questioned Defendant at the scene of the initial stop without handcuffing him. Wetzel did testify that he believed Defendant was initially hiding, but Defendant's subsequent cooperation should have dispelled any reasonable concerns that he posed a flight risk. *See Ricardo D.,* 912 F.2d at 340 (holding that manual restraint and show of authority not necessary where "hiding" suspect made no attempt to flee when approached by police); *cf. United States v. Taylor,* 716 F.2d 701, 709 (9th Cir.1983) (handcuffing justified where suspect disobeyed police and made suspicious movements inside vehicle); *People v. Brown,* 169 Cal.App.3d 159, 167, 215 Cal.Rptr. 101, 105 (Ct.App.1985) (handcuffing reasonable where resisting suspect attempted to frustrate further inquiry). To infer from this record that Officer Wetzel justifiably feared attacks by nearby accomplices would be to engage in pure speculation. *See Ricardo D.,* 912 F.2d at 341; *United States v. Melendez–Garcia,* 28 F.3d 1046, 1052–53 (10th Cir.1994).

■ The state correctly argues that a "suspect detained, frisked [and] handcuffed ... is not necessarily under arrest," citing *State v. Aguirre,* 130 Ariz. 54, 56, 633 P.2d

1047, 1049 (App.1981), and that "duration is an essential element in determining whether the initially lawful intrusion takes on the characteristics of an unlawful detention." *Winegar,* 147 Ariz. at 447, 711 P.2d at 586 (quoting *Huberts,* 637 F.2d at 636). However, as stated earlier, the means used to effectuate the detention are also relevant to the issue of when an investigatory detention becomes a *de facto* arrest. In the present case, the fact that Wetzel handcuffed Defendant and placed him in the patrol car is critical. *See Clevidence,* 153 Ariz. at 299, 736 P.2d at 383 (handcuffing "substantially aggravat[es] the intrusiveness of an investigatory stop" (quoting *Taylor,* 716 F.2d at 709)); *State v. Romero,* 178 Ariz. 45, 50, 870 P.2d 1141, 1146 (App.1994) (suspect forced to lie prone, frisked, handcuffed, placed in patrol car, and read constitutional rights was under arrest); *Melendez–Garcia,* 28 F.3d at 1052 (handcuffing a "far greater level of intrusion" than frisking for weapons). We also believe that telling Defendant that he was "under investigative detention," particularly when combined with handcuffing and Officer Wetzel's drawn gun, was sufficient to convince a reasonable person that he was under arrest and not free to leave. *See Winegar,* 147 Ariz. at 448, 711 P.2d at 587. We conclude that the State has failed to carry its burden of demonstrating that Officer Wetzel did not exceed the bounds of a valid investigatory detention and that Defendant was, therefore, arrested. We hold that the trial court erred in finding otherwise.

## B. Probable cause to arrest.

■ Defendant's *de facto* arrest would have been valid and the search and seizure legal if Officer Wetzel had probable cause to believe that Defendant had committed the burglary. *See, e.g., State v. Hein,* 138 Ariz. 360, 364, 674 P.2d 1358, 1362 (1983); A.R.S. § 13–3883(A)(1). The state does not argue that there was probable cause to arrest Defendant for burglary. No one saw the bur-

---

4. It is not clear exactly when Officer Wetzel frisked Defendant. At the suppression hearing, Wetzel did not refer to a frisk. However, he testified at trial that he frisked Defendant either while he was on the ground or standing up and after he handcuffed him. Defendant testified at the suppression hearing that he was searched over the hood of the patrol car. For the purposes of this appeal, we need only assume that Defendant was handcuffed before he was frisked.

glary suspect, his direction of escape, or the vehicle, if any, he drove.[5] No burglary tools or stolen property were found in the alley or near the dumpster. Although Wetzel had reason to believe Defendant was hiding, Defendant made no attempt to flee after Wetzel approached him. *See Ricardo D.*, 912 F.2d at 342. We must assume that Defendant would have been equally able to explain presence behind the dumpster had Wetzel inquired before the *de facto* arrest. Finding a lone individual in close proximity to a recently committed burglary, without more, does not establish probable cause. *See State v. Hansen*, 117 Ariz. 496, 498–99, 573 P.2d 896, 898–99 (App.1977) (no probable cause existed where defendant was observed sitting next to individual smoking a marijuana cigarette); *cf. State v. Miller*, 108 Ariz. 303, 306–07, 497 P.2d 516, 519–20 (1972) (probable cause existed where officer responded to building where witness saw two individuals breaking in and officer found two suspects standing under "ripped open" window). Because there was no probable cause, the arrest was illegal.

### III. Suppression of Evidence

#### A. Physical Evidence

▆▆▆ Defendant argues that the trial court should have suppressed the physical evidence obtained from Defendant's fanny pack as the fruit of the illegal arrest.[6] The Fourth Amendment's exclusionary rule requires that the taint of the illegal arrest be sufficiently attenuated from the consent to search for the methamphetamine to be admitted. *State v. Monge*, 173 Ariz. 279, 281, 842 P.2d 1292, 1294 (1992); *see also Dunaway*, 442 U.S. at 217, 219, 99 S.Ct. at 2259, 2260 (incriminating sketches and statements); *Brown v. Illinois*, 422 U.S. 590, 601–02, 95 S.Ct. 2254, 2260–61, 45 L.Ed.2d 416 (1975) (confession). In *Brown*, the Supreme Court established factors relevant to determining if consent has been tainted by an illegal arrest: (1) the temporal proximity between the illegal arrest and the consent to search; (2) any intervening circumstances; and (3) the purpose and flagrancy of the police misconduct. 422 U.S. at 603–04, 95 S.Ct. at 2261–62; *Monge*, 173 Ariz. at 281, 842 P.2d at 1294.

In the present case, we do not believe that Officer Wetzel's actions were flagrant or that he possessed any sinister purpose in detaining Defendant. However, there were no significant intervening circumstances between the *de facto* arrest and consent. Defendant was not given a *Miranda* warning, nor was he told that he had the right to refuse to consent. Furthermore, there was no temporal separation since Defendant was still in handcuffs when he gave consent for police to enter his car.

After considering the *Brown* factors, we conclude that the taint of the illegal arrest was not sufficiently attenuated from Defendant's consent to enter his vehicle and fanny pack. Therefore, the methamphetamine and any other physical evidence obtained from the pack should have been suppressed.

#### B. Statements

▆▆▆ Defendant also argues that his statements should have been suppressed as fruit of the illegal arrest. He does not, however, specify which statements. We assume he seeks to suppress those statements he made to police while in the back of the patrol car about the drugs Officer Long found in his pack. Again, we need to apply the *Brown* factors to determine if Defendant's statements were sufficiently attenuated from the illegal arrest. Only the second factor, intervening circumstances, warrants reconsideration. Defendant made the statements after being given *Miranda* warnings and formally placed under arrest for drug possession. However, *Miranda* warnings, alone, do not remove the taint of an illegal arrest. *Brown*, 422 U.S. at 602–04, 95 S.Ct. at 2261–62.

---

5. The report of the orange car in a nearby alley no doubt led Officer Wetzel to Defendant's location. However, it did not provide Wetzel with any additional information implicating Defendant in the burglary. Therefore, the report, by itself, was not enough to establish probable cause.

6. We note that the State charged Defendant only with possession of the methamphetamine and only the methamphetamine was introduced at trial.

Furthermore, the statements were an immediate by-product of the seizure of drugs which we have already determined should have been suppressed. Therefore, we find that Defendant's statements to police while in the patrol car should also have been excluded.

## CONCLUSION

The trial court erred in denying Defendant's motion to suppress the seized methamphetamine and Defendant's subsequent statements to police while in the patrol car. Harmless error exists only when there is no reasonable probability that the verdict would be different had the error not occurred. *Winegar,* 147 Ariz. at 450, 711 P.2d at 589. The error in the present case was not harmless and Defendant's conviction must be reversed. *See Monge,* 173 Ariz. at 282, 842 P.2d at 1295. We remand this case to the trial court for proceedings consistent with this decision.

McGREGOR, J., concurs.

NOYES, Judge, dissenting.

The facts regarding this nighttime alley encounter between Officer Wetzel and Defendant Blackmore are easily stated, but they raise a close question about whether the officer's exercise of what he thought were reasonable safety precautions violated defendant's right to be free from an unreasonable search and seizure.

The evidentiary hearing on the motion to suppress was presided over by the Honorable Jeffrey A. Hotham, who ruled that the initial stop and the investigative detention were appropriate, which is to say lawful. The majority finds an unlawful arrest, and reverses. I respectfully submit that if the evidence is viewed in a light most favorable to sustaining the trial court's ruling, as it must be, there is evidentiary support for that ruling, and no manifest error in it.

When the officer went by himself into that alley it was after 7:30 p.m. in April and it was getting dark. The officer knew that, moments ago, the victims had seen a burglar leave their house for the alley and they had seen a parked car in the alley. The alley was U-shaped; the victims' house backed onto one leg of the U and the parked car was in the other leg; a residential cul-de-sac formed the middle of the U. Although some distance and several houses stood between the victim's house and the parked car, the fact remains that the officer had good reason to suspect that a burglar and his parked car were in the alley. The only person the officer saw in the alley was defendant, hiding behind a dumpster near the parked car. There was no probable cause to arrest defendant for burglary at this point, but there was compelling reason to conduct an investigative detention, and to be concerned that defendant might be armed or dangerous or not alone.

The brief time frame relevant to the fourth-amendment analysis is covered by this testimony from Officer Wetzel about what happened when defendant came out from behind the dumpster after being ordered to do so at gunpoint:

> I got [him] on the ground, I handcuffed him. Officer Long came up behind me to make my back up, and I began to walk the defendant, Mr. Blackmore, to my patrol vehicle telling him that he is under investigative detention for a burglary which had just occurred. And I asked him if he had any identification. He said it was inside of the fanny pack in his car on the passenger's seat.

Defendant was searched for weapons and none were found. He was asked to give consent for officers to get his wallet from the parked car and he did so. While one officer went for the wallet, the other placed defendant in the patrol car. When Officer Wetzel was asked at the suppression hearing why he did not allow defendant to get the wallet himself, he said: "For safety. At this time, I still don't know if he was a suspect in the burglary or not. For all I know he might have a gun in the vehicle that he could pull out of the fanny pack." That the officer had safety concerns seems manifestly sensible; that the trial court found the officer's safety precautions appropriate does not seem manifestly erroneous.

The circumstances here are similar to those in *State v. Aguirre*, 130 Ariz. 54, 633 P.2d 1047 (App.1981), which affirmed the denial of a motion to suppress filed by a burglary suspect who was found hiding from an officer and was then frisked, searched, handcuffed and placed in a patrol car. Division Two of this Court found that Aguirre had not been arrested at that point; rather, "Appellant was being detained until the officer could get more information about the reported crime.... Whether handcuffing appellant and placing him in the police car was reasonable force must be evaluated in light of the circumstances." 130 Ariz. at 56, 633 P.2d at 1049.

Although in hindsight it appears that Officer Wetzel could have safely walked up and shaken hands with defendant, that hindsight obviously has no bearing on whether the officer's actions in securing defendant before talking with him were reasonable and therefore lawful. The trial court ruled that the officer acted appropriately in light of the circumstances confronting him in the alley that night, and that defendant was therefore subjected to lawful investigative detention, not unlawful arrest. Because I find evidentiary support for that ruling, I find no manifest error in it and I respectfully dissent from our reversal of it.