920 P.2d 779

### In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JT30243.

#### No. 1 CA–JV 95–0094.

Court of Appeals of Arizona,
Division 1, Department B.

July 2, 1996.

As Corrected July 8, 1996.

Glendale City Prosecutor by Tamika Madison and Peter Van Camp, Assistant City Prosecutors, Phoenix, for Appellant.

Gary Peter Klahr, P.C. by Gary Peter Klahr, Phoenix, for Appellee.

## OPINION

NOYES, Judge.

Appellee, a sixteen-year-old high school student, was cited for possession of tobacco products by a minor. The juvenile court granted Appellee's motion to suppress, and the State appealed. We affirm on grounds that the officers unreasonably "seized" Appellee.

### I

At 9:40 p.m. on August 20, 1994, Appellee was in a parking lot in the area of 59th Avenue and Bell Road in the city of Glendale. There were several other juveniles in the area, many of them skateboarding. A marked Glendale Police car was also in the area, occupied by two uniformed and armed officers assigned to the Juvenile Crime Prevention Unit. Officer Cindy Cox later testified: "We were working the north part of the town at that time and we noticed a large pack of juveniles by the car wash." The officers saw no suspicious activity, and it was before curfew, but they decided to "educate" the juveniles about curfew, and about liquor and tobacco laws. The officers had a "zero tolerance" policy on tobacco: they asked every juvenile with whom they came in contact about tobacco, and cited every juvenile who admitted possessing it.

The officers drove up to the "pack" of juveniles, stopped, and got. out. Officer

Christine DeSanti testified that "about the same time we pulled up everybody started to pretty much disperse." Appellee and a friend were among those who were leaving. Both officers called out to Appellee and her friend, in the words of the officers: "Come back, we need to talk to you for a few minutes," and "You need to come on back." Appellee and her friend came back and joined twenty or so juveniles in a semi-circle by the police car. The prosecutor asked Officer Cox, "Did you just round them all up together?" She answered, "Yes." Officer DeSanti admitted that the officers' "intent in stopping the kids was to inform them about laws and also to ask questions about crimes, at least possession of tobacco by a minor."

The officers, standing nearly back-to-back, told the juveniles that they were enforcing curfew, liquor and tobacco laws, and they then asked if anyone had any tobacco. When no one responded, the officers began looking at each juvenile. Officer DeSanti admitted looking at each juvenile in her part of the group, but Appellee was in the other part. Officer Cox denied looking at Appellee, but Appellee testified that when Officer Cox looked at her, she was intimidated, and so confessed to having cigarettes in her purse. (The hearing officer accepted Appellee's facts on this point.) After Officer Cox asked Appellee for the cigarettes, and Appellee opened her purse and handed them over, the officer wrote Appellee a citation for possession of tobacco products by a minor, a violation of Arizona Revised Statutes Annotated ("A.R.S.") section 13–3622 (1989). The other juvenile who confessed was also cited. The encounter leading up to Appellee's citation lasted three to five minutes. The officers did not draw weapons, nor did they physically touch or verbally abuse Appellee or anyone else. Some juveniles continued to skateboard around the area, laughing and joking, while the officers "educated" those in the round-up.

Appellee filed a motion to suppress evidence and statements on grounds that both were the product of an illegal detention and were obtained without *Miranda* warnings or those required by Rule 7(a) of the Arizona Rules of Procedure for the Juvenile Court.

An evidentiary hearing was presided over by the Honorable Cliff J. Vanell, a Glendale City Court Judge sitting as a juvenile hearing officer pursuant to A.R.S. section 8–232 (Supp.1995). Officers Cox and DeSanti testified, as did Appellee and two juveniles. Counsel stipulated that four other juveniles, who were in court, would testify that they also did not feel free to leave the round-up; they felt they had to stay and answer the officers' questions.

The hearing officer denied the motion to suppress, finding that "defendant was not 'in custody' for the purpose of *Miranda*." Appellee appealed to the juvenile court pursuant to A.R.S. section 8–232.02 (Supp.1995). The juvenile court reviewed the transcript of the hearing, considered the briefs and arguments of counsel, and granted Appellee's motion to suppress, finding that "the confession obtained in this matter was the result of illegal questioning." The State appealed to this Court pursuant to Rule 25(a), Arizona Rules of Procedure for the Juvenile Court. We have jurisdiction pursuant to A.R.S. section 8–236(A) (1989).

Although the hearing officer and the juvenile court decided the motion on Fifth Amendment questioning grounds, we affirm the juvenile court on Fourth Amendment seizure grounds, which were also argued by Appellee. We conclude that the primary defect here was that Appellee was unreasonably seized, and that this defect would not have been cured by advising Appellee of her *Miranda* rights.

## II

■ Whether a person has been seized by police is a mixed question of fact and law. Several Arizona cases hold that the trial court's ruling on a motion to suppress will be reversed only for clear and manifest error. *See, e.g., State v. Boyer*, 106 Ariz. 32, 34, 470 P.2d 439, 441 (1970), *cited in State v. Jarzab*, 123 Ariz. 308, 312, 599 P.2d 761, 765 (1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1069, 62 L.Ed.2d 789 (1980), *cited in State v. Clevidence*, 153 Ariz. 295, 297, 736 P.2d 379, 381 (App.1987), *cited in State v. Oliver*, 169 Ariz. 589, 593, 821 P.2d 250, 254 (App.1991), *cited in State v. Blackmore*, 183 Ariz. 473, 476, 904

P.2d 1297, 1300 (App.1995). It should be noted, however, that the "clear and manifest error" standard applies only to questions of fact; the applicable standard of review on questions of law is "de novo." *United States v. Mendenhall*, 446 U.S. 544, 551 n. 5, 100 S.Ct. 1870, 1875 n. 5, 64 L.Ed.2d 497 (1980) ("[T]he correctness of the legal characterization of the facts appearing in the record is a matter for this Court to determine."); *State v. Winegar*, 147 Ariz. 440, 445, 711 P.2d 579, 584 (1985) ("Although the trial court must establish the facts underlying a warrantless arrest determination, the ultimate legal conclusion is properly addressed by the appellate as well as the trial courts."). We accept the facts found by the hearing officer. Our review of the legal conclusion to be drawn from those facts is de novo.

## III

■ "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). The Fourth Amendment requires that the seizure be "reasonable." *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). A brief, investigatory detention is reasonable if supported by founded suspicion; an arrest is reasonable if supported by probable cause. *See, e.g., Terry*, 392 U.S. at 20–22, 88 S.Ct. at 1879–81. Police may not detain a person "even momentarily without reasonable, objective grounds for doing so." *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983).

■ The State concedes that the officers had no grounds to detain Appellee prior to her confession. The State argues that the encounter between Appellee and the officers was consensual. "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991) (quoting *California v.*

*Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1551–52, 113 L.Ed.2d 690 (1991)).

■ In deciding whether Appellee was seized by the officers, we will use the *Mendenhall–Royer* test, which is this: "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877; *Royer*, 460 U.S. at 502, 103 S.Ct. at 1326–27. Because the reasonable person standard is objective, it "allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment .... [and it] also ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached." *Michigan v. Chesternut*, 486 U.S. 567, 574, 108 S.Ct. 1975, 1980, 100 L.Ed.2d 565 (1988). Because the reasonable person standard is fact specific, we determine only that, on the facts in this case, the police conduct in question did amount to a seizure. *See id.* at 573, 108 S.Ct. at 1979.

■ Arizona follows the *Mendenhall–Royer* test, although our leading case, *Winegar*, restates it as follows: "The issue turns upon an evaluation of all the surrounding circumstances to determine whether a reasonable person, innocent of any crime, would reasonably believe that he was being arrested." 147 Ariz. at 448, 711 P.2d at 587. The *Mendenhall–Royer* test also presumes a reasonable, innocent person, *Bostick*, 501 U.S. at 438, 111 S.Ct. at 2388, and the following passage from *Winegar* shows that "arrested" in *Winegar* means the same as "seized" in *Mendenhall–Royer*:

"These circumstances surely amount to a show of official authority such that 'a reasonable person would have believed he was not free to leave.'" [*Florida v. Royer*, 460 U.S. at 501, 103 S.Ct. at 1326, *quoting Mendenhall*, 446 U.S. at 555, 100 S.Ct. at 1877–78]. At this point the defendant was under arrest for purposes of Fourth Amendment analysis.

147 Ariz. at 448, 711 P.2d at 587.

■ Some courts have struggled with whether the "reasonable person" of the *Mendenhall–Royer* test is always an adult. *See, e.g., In Re J.M.*, 619 A.2d 497, 501 (D.C.1992) (holding that the fourteen-year-old suspect's age could not be considered in determining whether he was seized, but could be considered in determining whether he consented to a search). The parties have not struggled with this issue; they have argued as though Appellee's age is relevant, and we agree that it is.

In the case of *United States v. Ricardo D.*, 912 F.2d 337, 342 (9th Cir.1990), the question was whether a juvenile was lawfully detained or illegally arrested. The court found that "all the circumstances, including the fact[ ] that the suspect was sixteen ... indicate a degree of coercion unacceptable as part of a *Terry* stop, and unsupportable on anything less than probable cause." *Id.* The *Ricardo D.* court noted that "[o]ver a decade ago, the Supreme Court suggested that a suspect's age may be considered in determining whether a seizure constitutes an arrest." *Id.* at 342 n. 2 (citing *Dunaway v. New York*, 442 U.S. 200, 215 n. 17, 99 S.Ct. 2248, 2258 n. 17, 60 L.Ed.2d 824 (1979)). The officers in Appellee's case knew that she was a child; they stopped her solely because she looked like a child. On these facts, we conclude that the "reasonable person" in the "free-to-leave" test is a juvenile.

## IV

■ The patrol car drove up and stopped in front of a group of juveniles; two armed and uniformed officers got out and began to "round up" the juveniles. A reasonable juvenile would believe that these officers had an authoritative purpose in mind.

■ Appellee's response to the officers' arrival was to walk away, which demonstrated to the officers that Appellee wanted to leave. The officers' response to Appellee's expressed intention was to overrule it by calling her back, politely but authoritatively, which demonstrated to the juvenile that the officers did not consent to her departure. The officers told Appellee that she "needed" to come back, that they "needed" to talk to her. A reasonable juvenile in this situation would believe that the officers meant what they said. "The mere fact that a police officer 'asks' a citizen to accompany him rather than commands obedience does not mean that a citizen can reasonably believe he is

**218**

free to refuse." *Winegar*, 147 Ariz. at 447, 711 P.2d at 586.

The officers stopped Appellee for investigative purposes without any reasonable, objective grounds for doing so. In *United States v. Palmer*, 603 F.2d 1286 (8th Cir. 1979), the officer, who worked a high-crime area, had a practice of "making pedestrian stops during which he filled out a field interview report form." *Id.* at 1287. When the officer saw Palmer and a companion, he stopped his car, "got out, waved his hand and called for them to come over towards the car." *Id.* Palmer complied at once, but the companion did not comply until the officer repeated himself. *Id.* The officer soon frisked both men, found concealed weapons, and arrested them. *Id.* at 1287–88. The court concluded that when the officer "called a second time" to the companion, it "constituted a sufficient show of authority to restrain appellant's freedom of movement, therefore appellant was seized." *Id.* at 1289. In explaining why the seizure was illegal, the *Palmer* court stated:

> We recognize that Officer Lottmann's stop was an attempt to further the social objective of crime prevention. However, the balance tips in favor of freedom from police interference when there is no articulable basis for suspecting appellant Palmer of involvement in criminal activity. "[E]ven assuming that [crime prevention] is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits."

*Id.* at 1290 (alteration in original) (citations omitted) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357 (1979)). *Palmer* held that "random pedestrian stops undertaken at the unfettered discretion of Officer Lottmann [are] violative of the Fourth Amendment." 603 F.2d at 1291. *Palmer* involved an adult, and more "demanding" circumstances than exist in Appellee's case. But, a relevant circumstance common to both cases, and warranting a similar level of scrutiny, is the fact that the officers authoritatively stopped a pedestrian for investigative purposes without any reasonable, objective grounds for doing so.

In view of all of the circumstances surrounding the incident, we conclude that, by the time the officers asked Appellee to incriminate herself, they had made a sufficient show of authority that a reasonable, innocent juvenile in Appellee's situation would have believed that she was not free to leave. We therefore conclude that the officers "seized" Appellee before they obtained her confession.

**V**

Because the officers seized Appellee with no reasonable, objective grounds for doing so, the seizure was unreasonable. Because the officers obtained Appellee's confession and cigarettes as the direct result of her unreasonable seizure, that evidence was properly suppressed. *See Royer*, 460 U.S. at 501, 103 S.Ct. at 1326.

The orders of the juvenile court are affirmed.

GRANT, P.J., and EHRLICH, J., concur.